**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**

| | | |
|---|---|---|
| KERRIE BORBOA, ET AL., | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 3:13-cv-844-JAG |
| v. | ) | |
| | ) | JURY DEMANDED |
| THEODORE L. CHANDLER, ET AL., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, PRELIMINARY
CERTIFICATION OF SETTLEMENT CLASS, APPROVAL OF CLASS
NOTICE, APPROVAL OF PLAN OF ALLOCATION, AND
<u>SCHEDULING OF FINAL APPROVAL HEARING</u>**

## <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION ...........................................................................................1

II.    FACTUAL AND PROCEDURAL BACKGROUND.............................................3

    A.     Summary of the Litigation. ...........................................................3

    B.     Description of the Allegations.........................................................6

    C.     Investigation of Claims and Discovery. .......................................7

    D.     Settlement Negotiations ................................................................8

    E.     The Proposed Settlement...............................................................9

    F.     Proposed Timetable ....................................................................10

III.    THE SETTLEMENT SATISFIES THE STANDARD FOR APPROVAL .............10

    A.     The Governing Law .....................................................................10

    B.     The Proposed Settlement Clearly Meets the *Jiffy Lube* Fairness Factors......11

        1.    The Posture of the Case at Time of Settlement.................................11

        2.    The Extent of Discovery Conducted.................................................12

        3.    The Circumstances Surrounding the Negotiations ...........................13

        4.    The Experience of Counsel in the Area of Litigation .......................14

    C.     The Proposed Settlement Satisfies the *Jiffy Lube* Adequacy Factors............14

        1.    The Relative Strength of Plaintiffs' Case on the Merits....................14

        2.    The Existence of Difficulties of Proof or Strong Defenses ..............15

        3.    The Anticipated Duration and Expense of Additional Litigation......17

        4.    The Solvency of Defendants...........................................................18

i

      5.     The Degree of Opposition to the Settlement......................................19

IV.    THE PLAN OF ALLOCATION AND NOTICE PLAN SHOULD
      BE APPROVED ........................................................................................20

     A.     The Proposed Plan of Allocation ..................................................20

     B.     The Proposed Notice Plan..............................................................22

            1.     Description of the Notice Plan............................................22

            2.     The Notice Plan Satisfies Rule 23 and Due Process Requirements...23

V.     CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE..............24

     A.     The Proposed Class Satisfies the Requirements of Rule 23(a)......................25

            1.     Numerosity........................................................................25

            2.     Commonality......................................................................25

             3.     Typicality ..........................................................................26

            4.     Adequacy ..........................................................................27

     B.     The Proposed Class Meets the Requirements of Rule 23(b)(1)....................28

     C.     KTMC Should be Appointed Counsel for the Class.....................................29

IV.    CONCLUSION........................................................................................30

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*In re Advanta Corp. ERISA Litig.*,
No. 09-cv-4974 (E.D. Pa. Oct. 9, 2013) ...............................................................21

*In re Advanta Corp. ERISA Litig.*,
No. 09-cv-4974 (E.D. Pa. Jan. 9, 2014) ...........................................................21, 23

*Bicking v. Mitchell Rubenstein & Assoc., P.C.*,
No. 11-cv-78, 2011 WL 5325674 (E.D. Va. Nov. 3, 2011) ........................... *passim*

*Boyd v. Coventry Health Care, Inc.*,
299 F.R.D. 451 (D. Md. 2014) ..................................................................... *passim*

*Brieger v. Tellabs, Inc.*,
659 F. Supp. 2d 967 (N.D. Ill. 2009) ..............................................................16, 17

*In re Calpine Corp. ERISA Litig.*,
No. 03-cv-1685 (N.D. Cal. Oct. 23, 2008) ...........................................................23

*In re Chesapeake Energy Corp. 2012 ERISA Litig.*,
286 F.R.D. 621 (W.D. Okla. 2012) .......................................................................30

*In re Coventry Health Care, Inc. ERISA Litig.*,
No. 09-cv-2661 (D. Md. Oct. 23, 2013) ...........................................................23, 25

*Dalton, et al. v. Old Second Bancorp, Inc., et al.*,
No. 11-cv-1112 (N.D. Ill. Mar. 1, 2013) ...............................................................23

*Decohen v. Abbasi, LLC*,
299 F.R.D. 469 (D. Md. 2014) ..............................................................................19

*DiFelice v. U.S. Airways, Inc*,
235 F.R.D. 70 (E.D. Va. 2006) .............................................................................28

*DiFelice v. U.S. Airways, Inc.*,
436 F. Supp. 2d 756 (E.D. Va. 2006) ..........................................................16, 17, 28

*Dudenhoefer v. Fifth Third Bancorp*,
692 F.3d 410 (6th Cir. 2012) ................................................................................30

*Fifth Third Bancorp, et al. v. Dudenhoeffer, et al.*,
134 S. Ct. 2459 (2014) ...................................................................................16, 30

*Flinn v. FMC Corp*,
   528 F.2d 1169 (4th Cir. 1975) ...................................................................19

*Gen. Tel. Co. v. Falcon*,
   457 U.S. 147 (1982)..........................................................................................26

*Groves v. Roy G. Hildreth & Son, Inc.*,
   No. 08-cv-00820, 2011 WL 4382708 (S.D.W. Va. Sept. 20, 2011)......................................15

*Harris v. Koenig*,
   271 F.R.D. 383 (D.D.C. 2010).......................................................................28

*Harris v. Rainey*,
   299 F.R.D. 486 (W.D. Va. 2014).................................................................28

*In re Jiffy Lube Sec. Litig.*,
   927 F.2d 155 (4th Cir. 1991) ...............................................................*passim*

*Knight v. Lavine*,
   No. 12-cv-611, 2013 WL 427880 (E.D. Va. Feb. 4, 2013) ...............................28

*Landgraff v. Columbia HCA Healthcare Corp.*,
   No. 98-cv-90, 2000 WL 33726564 (M.D. Tenn. May 24, 2000) ...........................17

*Langbecker v. Elec. Data Sys., Corp.*,
   476 F.3d 299 (5th Cir. 2007) ...........................................................................15

*In re MicroStrategy Sec. Litig.*,
   148 F. Supp. 2d 654 (E.D. Va. 2001) ...............................................*passim*

*In re The Mills Corp. Sec. Litig.*,
   265 F.R.D. 246 (E.D. Va. 2009) ........................................................*passim*

*Nelson v. Hodowal (IPALCO)*,
   512 F.3d 347 (7th Cir. 2008) .......................................................................17

*In re Schering Plough Corp. ERISA Litig.*,
   589 F.3d 585 (3d Cir. 2009)........................................................................28

*Shane, et al. v. Edge, et al.*,
   No. 10-cv-50089 (N.D. Ill. Jan. 15, 2013)..................................................21

*Shane, et al. v. Edge, et al.*,
   No. 10-cv-50089 (N.D. Ill. May 17, 2013)..................................................21

*Smith, et al. v. Krispy Kreme Doughnut Corp., et al.*,
   No. 05-cv-187 (M.D.N.C. Jan. 10, 2007) ..........................................21, 23

*Smith v. Krispy Kreme Doughnut Corp.*,
    No. 05-cv-00187, 2007 WL 119157 (M.D.N.C. Jan. 10, 2007) ...........................................16

*Temp. Servs., Inc. v. Am. Int'l Grp., Inc.*,
    No. 08-cv-00271, 2012 WL 2370523 (D.S.C. June 22, 2012) ..............................................29

*Temp. Servs., Inc. v. Am. Int'l Grp., Inc.*,
    No. 08-cv-00271, 2012 WL 4061537 (D.S.C. Sept. 14, 2012) ...............................13, 15, 25

*Tibble, et al. v. Edison Int'l., et al.*,
    No. 13-550 (Oct. 2, 2014) ...................................................................................................16

*In re Titanium Dioxide Antitrust Litig.*,
    284 F.R.D. 328 (D. Md. 2012) ............................................................................................27

*In re Titanium Dioxide Antitrust Litig.*,
    962 F. Supp. 2d 840 (D. Md. 2013) ....................................................................................27

*In re Titanium Dioxide Antitrust Litig.*,
    No. 10-cv-318, 2013 WL 5182093 (D. Md. Sept. 12, 2013)...............................................22

*In re Wachovia Corp. ERISA Litig.*,
    No. 09-cv-0262, 2011 WL 7787962 (W.D.N.C. Oct. 24, 2011) ..........................................15

*In re Wachovia Corp. ERISA Litig.*,
    No. 09-cv-262 (W.D.N.C. Mar. 2, 2011).......................................................................21, 23

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541 (2011) ........................................................................................................25

## Federal Statutes

Class Action Fairness Act of 2005, 28 U.S.C. § 1715.................................................................10

Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.* ................... *passim*

ERISA § 104(b) ..........................................................................................................................7

## Federal Rules

FED. R. CIV. P. 23 ............................................................................................................22, 24, 27

FED. R. CIV. P. 23(a) ...................................................................................................25, 26, 28

FED. R. CIV. P. 23(a)(2) ......................................................................................................26

FED. R. CIV. P. 23(a)(3) ......................................................................................................27

FED. R. CIV. P. 23(a)(4) ......................................................................................................27

FED. R. CIV. P. 23(b) ................................................................................................28

FED. R. CIV. P. 23(b)(1) ..........................................................................................28

FED. R. CIV. P. 23(b)(1)(A) .....................................................................................28

FED. R. CIV. P. 23(b)(1)(B) .....................................................................................28

FED. R. CIV. P. 23(e) .....................................................................................22, 23, 24

FED. R. CIV. P. 23(e)(1) ...........................................................................................22

FED. R. CIV. P. 23(g) ...............................................................................................27

**Other Authorities**

Newberg on Class Actions § 11.28 (3d ed. 1992) .....................................................14

Newberg on Class Actions § 11:53 (4th ed. 2010) ...................................................24

7B Charles Alan Wright, Arthur W. Miller & Mary Kay Kane, FED. PRAC. &
  PROC. § 1797.6 (3d ed. 2010) ...............................................................................24

Plaintiffs Kerrie Borboa, Timothy O'Grady, and Bertrand Francis ("Named Plaintiffs" or "Plaintiffs"), participants in the LandAmerica Financial Group Employee Savings and Stock Ownership Plan (the "Plan"), submit this Memorandum of Law in Support of their Unopposed Motion for Preliminary Approval of the Proposed Settlement ("Motion for Preliminary Approval") entered into with Defendants,[1] and respectfully move this Court for an Order (1) preliminarily approving the proposed Settlement Agreement (the "Settlement" or "Settlement Agreement"),[2] (2) preliminarily certifying the Settlement Class, (3) approving the form and manner of providing notice of the Settlement to the Settlement Class (the "Notice Plan"), (4) approving the proposed Plan of Allocation, and (5) scheduling a Final Approval Hearing.

## I.    INTRODUCTION

Plaintiffs and Defendants (collectively the "Parties") reached a proposed Settlement of this Action, which asserts claims under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.* ("ERISA"), that provides for a monetary payment of $5,000,000.00 (the "Class Settlement Amount"), yielding substantial benefits to members of the Settlement Class (defined below), and resolving all claims asserted by Plaintiffs on behalf of the Plan and the Settlement Class.  This is an excellent result for the Settlement Class.

---

[1]  "Defendants" refers collectively to the "Benefits Committee Director Defendants," consisting of Jeffrey D. Vaughan, Kristin M. Bolton, J. Kevin Kelly, Delcenia C. Prentiss, and Debra J. Van Buskirk, the "Director Defendants," consisting of Theodore L. Chandler, Janet A. Alpert, Gale K. Caruso, Michael Dinkins, Charles H. Foster, Jr., John P. McCann, Dianne M. Neal, Robert F. Norfleet, Jr., Robert T. Skunda, Julious P. Smith, Jr., Thomas G. Snead, Jr., Eugene P. Trani, and Marshall B. Wishnack, and the "Employee Committee Defendants," consisting of Ronald B. Ramos, Jim Cooke, Jr., Lloyd Osgood, and Scott Blackwell.

[2]  The Settlement Agreement, attached as Exhibit A hereto, itself has several exhibits.  These exhibits include the proposed Preliminary Approval Order submitted by the Parties to the Settlement Agreement, which is appended to the Settlement Agreement as Exhibit 1, and the proposed Final Approval Order and Judgment appended to the Settlement Agreement as Exhibit 2.  The provisions of the Settlement Agreement, including all definitions and defined terms, are incorporated by reference herein.  Thus, all capitalized terms not otherwise defined in the instant memorandum shall have the same meaning as ascribed to them in the Settlement Agreement.

In light of the facts, governing law, and substantial risks of continued litigation, Plaintiffs and Class Counsel[3] believe the proposed Settlement is eminently fair, reasonable, and adequate, and in the best interests of the proposed Settlement Class, as it provides for an immediate and meaningful recovery.  The Parties agreed to the proposed Settlement after multiple settlement sessions, including a full-day of mediation discussions facilitated by David Geronemus of JAMS,[4] and a settlement conference presided over by Magistrate Judge David Novak.  The involvement of these two neutrals demonstrates the absence of fraud or collusion in the proposed Settlement.

As set forth below in detail, all prerequisites for preliminary approval have been met and the proposed Settlement should be preliminarily approved allowing Plaintiffs to provide notice to the Settlement Class.  The proposed Notice Plan which consists of individualized direct-mail, a summary publication in the The Richmond Times Dispatch, and a dedicated Internet settlement website, is consistent with the forms of notice approved in directly analogous actions and satisfies any due process concerns.  The Notice Plan will inform Settlement Class Members of the terms of the Settlement, how to object to the Settlement, and the date of the Final Approval Hearing.  Moreover, given that this Action was settled prior to Plaintiffs seeking class certification, as part of the Settlement Agreement, the Parties request the certification of the Settlement Class for settlement purposes only.[5]

---

[3]  "Class Counsel" means Kessler Topaz Meltzer & Check, LLP, referred to also as KTMC. Class Counsel was assisted ably in the prosecution of this Action by Gainey McKenna & Egleston (GM&E) and Izard Nobel LLP, who also support the proposed Settlement.  Class Counsel together with GM&E, Izard Nobel LLP, and Williams & Skilling, P.C. are referred to herein as "Plaintiffs' Counsel."

[4]  Judicial Arbitration and Mediation Services, Inc.

[5]  The Parties ultimately agreed to a slightly longer Settlement Class Period, beginning on February 7, 2008 rather than February 18, 2008 as in the *O'Grady* action (*see infra* note 8), or June 30, 2008 as in the Complaint.  This provides a recovery to Settlement Class Members who

Finally, Plaintiffs seek approval of the proposed Plan of Allocation to govern the distribution of the Class Settlement Amount to the Settlement Class and ask the Court to schedule a Final Approval Hearing.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   Summary of the Litigation

On November 26, 2008, LandAmerica Financial Group, Inc. ("LandAmerica", "LFG", or the "Company") and LFG's main subsidiary, LandAmerica 1031 Exchange Services, Inc. ("LES"), filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code in the United States Bankruptcy Court for the Eastern District of Virginia (the "Bankruptcy Court").[6]   On November 23, 2009, the Bankruptcy Court entered an order confirming the bankruptcy plan.  Among other things, the bankruptcy plan created the LFG Trust for purposes of administering the bankruptcy plan and appointed the LFG Trustee.

Plaintiff Borboa filed her initial ERISA complaint on June 8, 2011, alleging that Defendants, who are former officers or directors of LFG and/or LES, violated their fiduciary duties by, *inter alia*, allowing investment of Plan assets in LFG equity during the period June 30, 2008 to July 31, 2009 when they knew or should have known that such investment was imprudent. On June 24, 2011, the LFG Trustee filed a Director and Officer Action ("D&O Action"), naming some of the Defendants in the *Borboa* action, alleging breaches of fiduciary duties owed to LFG and LES.  The alleged breaches of fiduciary duties in the D&O Action took place during a time period that overlapped with the Class Period alleged in the *Borboa* action.

could potentially bring the same claims alleged in the Complaint, but who could be barred by the applicable statute of limitations from pursuing such claims. The freezing of the ARS market in early February 2008 was one of the primary reasons, as discussed below, that Plaintiffs allege LFG Stock became imprudent.  *See also* Complaint ¶¶ 12, 129-130, 149, 150-63, 168-171.

[6]  LFG would have been named as a defendant-fiduciary in the Action but was not named given that LFG filed for bankruptcy prior to Plaintiff Borboa filing her complaint.

The LFG Trustee then filed an emergency motion in the Bankruptcy Court alleging that the *Borboa* action was an "Enjoined Action" under the bankruptcy plan. Plaintiff Borboa disagreed with the LFG Trustee's position and the parties briefed the issue. Nonetheless, in the interest of resolving the dispute, Plaintiff Borboa and the LFG Trustee executed a stipulation on July 11, 2011, wherein Plaintiff Borboa agreed to withdraw the *Borboa* action without prejudice, with an agreement that any statute of limitations applicable to the *Borboa* action as against the director and officer Defendants named therein would be tolled. KTMC also negotiated and secured other valuable concessions including that the LFG Trustee agreed to preserve documents, communications, information, and data relevant to the allegations in the *Borboa* action. The Bankruptcy Court approved the Stipulation on August 1, 2011. Having secured the agreements to preserve relevant documents and toll the applicable statutes of limitations, Plaintiff Borboa filed a voluntary notice of dismissal on August 22, 2011, by which the *Borboa* action was dismissed without prejudice to her ability to re-file once the Bankruptcy Action was completed, which the Court granted two days later.[7] This voluntary dismissal ensured that the relevant insurance assets would not needlessly be depleted during the bankruptcy process.

In June 2012, the LFG Trustee announced the settlement of the D&O Action, and sought relief from the temporary injunction provisions in order to implement the terms of the settlement. In addition to seeking approval of the settlement agreement, the LFG Trustee also requested that the Bankruptcy Court confirm that the temporary injunction provisions contained in the bankruptcy plan remain in effect. Plaintiff Borboa objected to the LFG Trustee's attempt to use

---

[7] In light of the negotiations for the voluntary dismissal of the *Borboa* action, Plaintiff O'Grady reached an agreement with the LFG Trustee to refrain from filing suit at that time in return for production of the Plan documents previously demanded by Plaintiff O'Grady. In addition, Plaintiff O'Grady secured an agreement that his claims were similarly tolled while the bankruptcy plan injunction was in place. Plaintiff O'Grady's counsel prepared a complaint to have it ready for filing with the Court once the injunction was lifted.

the settlement agreement to perpetuate the temporary plan injunction.  Plaintiff Borboa's counsel (with the assistance of bankruptcy counsel) eventually reached agreement with the LFG Trustee wherein the LFG Trustee agreed not to seek confirmation of the temporary plan injunction as part of the settlement process.  This agreement paved the way for later negotiations with the LFG Trustee to lift the temporary plan injunction with respect to the *Borboa* action.

In December 2013, the LFG Trustee stipulated that the *Borboa* action could be reinstated.  Specifically, the LFG Trustee and Plaintiff Borboa's counsel agreed that effective December 20, 2013, Plaintiff Borboa was permitted to re-file her action.   On December 16, 2013, the Bankruptcy Court endorsed the Parties' agreement, and on December 20, 2013, Plaintiff Borboa re-filed the *Borboa* Complaint.  Dkt. No. 1.  Following the re-filing of the *Borboa* Complaint, the Parties began discussing the possibility of a settlement of this Action.  Accordingly, on March 4, 2014, the Parties filed a joint motion to stay proceedings to allow for mediation (Dkt. No. 18), which was granted (Dkt. No. 19).[8]   Ultimately, the Parties' efforts during this round of negotiations were unsuccessful.  Accordingly, per the Parties' request, on September 8, 2014, the Court entered a schedule which, *inter alia*, provided dates for the filing of a motion to consolidate the *Borboa* action with the *O'Grady* action, the filing of a consolidated complaint, and the filing of Defendants' anticipated response thereto.  Dkt. No. 29.  Pursuant to the schedule, on September 16, 2014, Plaintiff Borboa filed a motion with a supporting memorandum seeking to, among other things, consolidate the *Borboa* and *O'Grady* actions and

---

[8]  On March 20, 2014, Plaintiff O'Grady filed his action, which he had previously refrained from filing.  *See supra* note 7.  His complaint alleged substantively similar violations of ERISA against the same Defendants named in the *Borboa* action.  Case No. 3:14-cv-199, Dkt. No. 1.  Seven days after filing his complaint, Plaintiff O'Grady and Defendants filed a joint motion to stay proceedings to allow the parties in that action to participate in the mediation with the parties in the *Borboa* action.

appoint KTMC as Interim Class Counsel for the consolidated action.  Dkt. Nos. 30, 31.  On September 26, 2014, the Court granted the motion.  Dkt. No. 34.

On October 6, 2014, Plaintiffs Borboa, O'Grady, and Francis filed their Consolidated Complaint (hereinafter the "Complaint") (Dkt. No. 35), which Defendants moved to dismiss on October 27, 2014.  Dkt. Nos. 45-46.  Plaintiffs opposed the motion to dismiss on November 17, 2014 (Dkt. No. 48), and Defendants filed their reply on November 26, 2014.  Dkt. No. 49.  On December 17, 2014, counsel for the Parties appeared before the Court for an initial pretrial conference, following which the Court issued a pretrial order setting forth the dates for the litigation proceedings.  Dkt. No. 56.  The Court further referred the action to Magistrate Judge Novak for a settlement conference.  Dkt. No. 57.  Following a teleconference with Judge Novak, the action was set for a settlement conference on February 4, 2015.  Dkt. No. 59.  In the interim, and while the motion to dismiss was still pending, pursuant to September 8, 2014 scheduling order, Defendants filed their answers to the Complaint.  Dkt. Nos. 60, 61.

On December 31, 2014, the Court denied in large part Defendants' motion to dismiss. Dkt. No. 62.  Thereafter, the Parties prepared for and participated in the February 4, 2015 settlement conference with Judge Novak, which resulted in the agreement to settle now presented to this Court for preliminary approval.

### B.    Description of the Allegations

The thrust of Plaintiffs' allegations is that Defendants allowed the imprudent investment of the Plan's assets in LFG stock throughout the Class Period despite the fact that they knew or should have known that such investment was imprudent as a retirement vehicle because of the corporate mismanagement and sea-change in the basic risk profile and business prospects of the Company.  Complaint at ¶ 12.  In particular, Plaintiffs alleged LFG Stock was an imprudent Plan

investment option because:  (i) LFG's title insurance operations were devastated by the collapse of the subprime mortgage industry; (ii) LFG was exposed to the inherently risky practices of its subsidiary LES, which imprudently gambled its survival upon the stability of the auction rate securities ("ARS"); and (iii) LFG concealed the truth concerning its rapidly deteriorating condition given the aforementioned.  *Id*.  As a consequence of the above, Plaintiffs alleged that significant investment of employees' retirement savings in LandAmerica Stock would inevitably result in substantial losses to the Plan and, consequently, to the Plan's Participants.  *Id.*[9]

### C.     Investigation of Claims and Discovery

Class Counsel, with the aid of Plaintiffs' Counsel, have expended significant time and resources investigating the claims alleged in the Action, including  review of a vast volume of publicly available materials related to the Company and the Plan, such as Forms 10-K and 11-K filed with the Securities and Exchange Commission ("SEC").  As part of its investigation and discovery efforts, on June 9, 2011, Class Counsel requested Plan-related documents from Defendants pursuant to ERISA § 104(b).  Defendants complied with the request on October 18, 2011.[10]  Further, in May 2014, Class Counsel informally requested records related to LFG from the LandAmerica Group Liquidation Trust ("LFG Trust").  On May 20, 2014, the LFG Trust produced numerous documents including:  (i) minutes from meetings of the LandAmerica Financial Group Board of Directors; (ii) meeting minutes from the LandAmerica Investment Committee; (iii) meeting minutes from the LandAmerica Employee Committee; and (iv)

---

[9]  The Complaint alleged three counts.  The primary count alleged LFG Stock was imprudent as described above.  The second count alleged that the Director Defendants failed to avoid or ameliorate inherent conflicts of interests (Complaint at ¶¶ 241-247), and the third count alleged that the Director Defendants and Investment Funds Committee Defendants failed to adequately monitor other fiduciaries they were responsible for monitoring (*Id.* at ¶¶ 248-259).

[10]  Counsel for Plaintiff O'Grady conducted a similar investigation before filing the initial complaint in that action.  *See supra* note 7 (discussing Plaintiff O'Grady's counsel's negotiations for Plan-related documents).

documents from Merrill Lynch related to the Plan.  These efforts enabled Plaintiffs to delve into the merits of the Action, including identifying the fiduciaries believed to have discretionary authority or control regarding the Plan and its assets.  The information obtained was incorporated into the Complaint and Plaintiffs' mediation memoranda and arguments during the two mediations discussed *infra*.

Plaintiffs' discovery efforts continued following the filing of the Complaint.  On December 5, 2014, the Parties exchanged Initial Disclosures.  Then, on January 9, 2015, Class Counsel issued Plaintiffs' First Requests for Production and First Set of Interrogatories to all Defendants.  Class Counsel also issued subpoenas for documents to third party entities on January 12, 2015, including:  (i) the LFG Trustee; (ii) Bank of America Merrill Lynch, which served as the Plan's Trustee; (iii) CapTrust Financial Advisors, who provided advice with respect to the Plan; and (iv) the law firm of Williams Mullen, which served as fiduciary counsel for the Plan.  Discovery was ongoing at the time the Parties agreed to the Settlement.  Per the Court's February 5, 2015 Order, all pending deadlines have been stayed.  *See* Dkt. No. 63.[11]

**D.    Settlement Negotiations**

The settlement negotiations in this Action were intense and certainly arm's-length.  The Parties participated in two separate mediation sessions in addition to informal settlement discussions.  First, in June 2014, the Parties participated in a full day, formal mediation session under the guidance of David Geronemus of JAMS.  In advance of that session, the Parties submitted extensive, written, confidential mediation memoranda to Mr. Geronemus.  During the

---

[11]  Even post-settlement, it has been necessary for Class Counsel to continue discovery efforts. In particular, because the Plan is no longer in existence, Class Counsel served a subpoena on the Plan's former record keeper, Merrill Lynch, Pierce, Fenner & Smith Inc., in order to obtain (1) Plan participant addresses needed to send notice of the Settlement to the Settlement Class, and (2) Plan transaction data needed to implement the proposed Plan of Allocation described *infra*.

mediation, the Parties engaged in spirited debate as to critical legal and factual issues concerning liability and damages.  The Parties concluded discussions that day, remaining far apart in their respective positions, and returned to a litigation posture.  Following the Court's December 31, 2014 order denying in large part Defendants' motion to dismiss, the Parties participated in a settlement conference under the auspices of Magistrate Judge Novak on February 4, 2015. Ahead of the settlement conference, Plaintiffs submitted a detailed memorandum setting forth support for their position.  Additionally, leading up to the settlement conference, the Parties engaged in settlement discussions with each other in an effort to narrow the differences in their positions.

After hard-fought negotiation at the settlement conference, the Parties executed a memorandum of understanding, which formed the basis of the Settlement presented for preliminary approval.  Throughout the litigation and extensive mediation process, Class Counsel and Plaintiffs' Counsel were cognizant of the strengths and weaknesses of Plaintiffs' claims and Defendants' defenses.  The arm's-length nature of the settlement negotiations strongly support the conclusion that the proposed Settlement is fair, reasonable, and adequate.

### E.     The Proposed Settlement

The Settlement provides that Defendants will pay $5,000,000.00 to the Reinstated Plan to be allocated to Settlement Class Members pursuant to the Proposed Plan of Allocation discussed *infra*.  In exchange, Plaintiffs and the Plan will dismiss their claims, as set forth more fully in the Settlement Agreement.  The Settlement Agreement also sets forth the proposed Notice Plan to Settlement Class Members, and provides for the payment of attorneys' fees and Plaintiffs' Case Contribution Award, both of which are subject to Court approval.

### F.    Proposed Timetable

Attached hereto as Exhibit B is the proposed schedule for further events in the settlement approval process agreed to by the Parties.  As reflected therein, the Parties request that the Court schedule a Final Approval Hearing at least one hundred (100) days from the filing of the instant Motion for Preliminary Approval.  This time period will ensure, as required by CAFA,[12] that the Final Approval Hearing takes place at least ninety (90) days from the date Defendants mail notice of the Settlement pursuant to CAFA ("CAFA Notice").[13]  The Parties also request that the Final Approval Hearing take place at least sixty (60) days from the mailing of Class Notice to give the Settlement Class fair notice of the hearing date.

## III.    THE SETTLEMENT SATISFIES THE STANDARD FOR APPROVAL

### A.    The Governing Law

As an initial matter, "'there is a strong initial presumption that [a] compromise is fair and reasonable.'"  *In re The Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 258 (E.D. Va. 2009) ("*Mills Corp.*") (citation omitted).  In the Fourth Circuit, analysis of a proposed settlement focuses on "fairness" and "adequacy."  *See, e.g.*, *In re MicroStrategy Sec. Litig.*, 148 F. Supp. 2d 654, 663 (E.D. Va. 2001) ("*MicroStrategy*").  "A class settlement is *fair* if it was 'reached as a result of good faith bargaining at arm's length, without collusion.'"  *Bicking v. Mitchell Rubenstein & Assoc., P.C.*, No. 11-cv-78, 2011 WL 5325674, at *4 (E.D. Va. Nov. 3, 2011) (quoting *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 159 (4th Cir. 1991)) (emphasis in original).  In making this determination, a court, guided by the Fourth Circuit's *Jiffy Lube* decision, should consider "(1) the posture of the case at the time settlement was proposed, (2) the extent of discovery that has been conducted, (3) the circumstances surrounding the negotiations, and (4) the experience of

---

[12]  Class Action Fairness Act of 2005, 28 U.S.C. § 1715.

[13]  The proposed form of CAFA Notice is attached to the Settlement Agreement as Exhibit 1.C.

counsel in the area of … class action litigation." *Id.*   Additionally, "[w]hether a settlement is *adequate* depends upon '(1) the relative strength of the plaintiffs' case on the merits, (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial, (3) the anticipated duration and expense of additional litigation, (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment, and (5) the degree of opposition to the settlement.'"   *Bicking*, 2011 WL 5325674, at *4 (quoting *Jiffy Lube*, 927 F.2d at 159) (emphasis in original).

As discussed in detail below, the Settlement clearly meets the Fourth Circuit's standards for testing the fairness and adequacy of a settlement, and should thus be preliminarily approved.

### B.   The Proposed Settlement Clearly Meets the *Jiffy Lube* Fairness Factors

#### 1.   The Posture of the Case at Time of Settlement

"The first *Jiffy Lube* factor directs the Court to evaluate essentially how far the case has come from its inception."   *Mills Corp.*, 265 F.R.D. at 254.   "If a case is still immature, with a great deal of uncompleted discovery, the wariness of a reviewing court should be elevated and attuned to "questions of possible collusion among the settling parties." *Id.* (citing *Jiffy Lube*, 927 F.2d at 159).   "On the other hand, in cases in which discovery has been substantial and several briefs have been filed and argued, courts should be inclined to favor the legitimacy of a settlement."   *Id.* (citing *MicroStrategy*, 148 F. Supp. 2d at 664).

As discussed above, Class Counsel's efforts in this Action span back almost four years to the initial filing of the *Borboa* action in 2011.   Several months of briefing and other activity in the Bankruptcy Court ensued, including Class Counsel's written opposition to the LFG Trustee's emergency motion to enjoin the case, as well as argument to Judge Huennekens in a July 2012 hearing regarding the same and the larger temporary plan injunction issue.   Ultimately Class

Counsel secured the necessary concessions from the LFG Trustee that allowed Plaintiff Borboa to dismiss her complaint without prejudice during the pendency of the bankruptcy proceedings. Once Plaintiff Borboa's action was reinstated, the Settlement was only agreed to after full briefing and the Court's decision on Defendants' motion to dismiss which, in large part, rejected Defendants' arguments.

Further, the Parties participated in two rounds of formal mediations, one under the auspices of a private neutral and one under the guidance of Magistrate Judge Novak, and more than eight months of informal settlement-related negotiations. These facts are sufficient to satisfy the first *Jiffy Lube* fairness factor. *See, e.g.*, *Boyd v. Coventry Health Care, Inc.*, 299 F.R.D. 451, 460 (D. Md. 2014) (finding fairness satisfied in analogous action due to, *inter alia*, that "[t]he record indicates that the Settlement Agreement is a product of good faith, arms-length negotiations following two rounds of mediation, first privately and then with Magistrate Judge Connelly" and "the parties fully briefed a motion to dismiss"); *MicroStrategy*, 148 F. Supp. 2d at 664 (noting fact that settlement was reached after a "vigorously contested" motion to dismiss decision which was "denied in all material respects and in favor of plaintiffs" supported the fairness of the proposed settlement); *Bicking*, 2011 WL 5325674, at *5 (noting fact that settlement was reached "under the supervision and direction of Magistrate Judge [] and only after this Court dismissed Defendants' Motion to Dismiss" supported the finding of fairness).

### 2.    The Extent of Discovery Conducted

"Like the first factor, the second factor—evaluating the extent of discovery that has been conducted—enables the Court to ensure that the case is well-enough developed for Class Counsel and Plaintiffs alike to appreciate the full landscape of their case when agreeing to enter into this Settlement." *Mills Corp.*, 265 F.R.D. at 254. The discussion in Section II.C describes

in detail Class Counsel's efforts with regard to investigation and discovery.  In sum, Plaintiffs conducted extensive investigations into the underlying merits of the actions in connection with the filing of their initial complaints again before the 2013 re-filed *Borboa* complaint was docketed, and in connection with the filing of the Complaint, including the review of a vast array of publicly available records regarding the financial condition of LandAmerica and the assets held by the Plan.  After initiation of the Action, Plaintiffs continued their discovery efforts through informal requests for documents from the LFG Trust, document requests and interrogatories served on Defendants, and four third-party subpoenas.  Thus, the Settlement was reached at a time when Plaintiffs had a sufficient understanding of the strengths and weaknesses of their claims through the discovery that had been undertaken, supporting the fairness of the proposed Settlement.

### 3.    The Circumstances Surrounding the Negotiations

"The objective of this factor is to ensure that counsel entered into settlement negotiations on behalf of their clients after becoming fully informed of all pertinent factual and legal issues in the case." *Mills Corp.*, 265 F.R.D. at 255.  The fact that the negotiations in this Action were "adversarial" and were conducted at "arm's length" helps dispel any concern that counsel colluded in reaching agreement. *MicroStrategy*, 148 F. Supp. 2d at 665.  As noted above, the Parties participated in two, formal mediation sessions, and continued to discuss parameters in the interim before the Settlement was agreed upon.  The arm's-length nature of the negotiations should not be doubted.  Moreover, as courts within this Circuit have often recognized, "supervision by a mediator lends an air of fairness to agreements that are ultimately reached." *Temp. Servs., Inc. v. Am. Int'l Grp., Inc.*, No. 08-cv-00271, 2012 WL 4061537, at *12 (D.S.C. Sept. 14, 2012) (collecting cases).  Magistrate Novak's involvement in the negotiations which

13

ultimately led to the Settlement further supports the fairness of the Settlement.  Absent evidence to the contrary, a court should presume that settlement negotiations were conducted in good faith and that the resulting agreement was reached without collusion.  Newberg on Class Actions § 11.28 at 1159 (3d ed. 1992).  This Court can feel confident reaching such a conclusion here.

### 4.   The Experience of Counsel in the Area of the Litigation

This factor encourages courts to examine the experience of counsel in order to determine whether there was any collusion between the defendants and plaintiffs in reaching the settlement. *Jiffy Lube*, 927 F.2d at 159.  As discussed in greater detail *infra* in Section V.C, Class Counsel KTMC is one of the most experienced law firms in the country when it comes to the prosecution of ERISA breach of fiduciary duty class actions.  Class Counsel and Plaintiffs' Counsels' vast experience in analogous actions weighs strongly in favor of the fairness of the proposed Settlement, a Settlement which they firmly stand behind.  *See, e.g.*, *MicroStrategy*, 148 F. Supp. 2d at 665 (finding "that counsel for both sides are nationally recognized members of the [] bar further minimizes concerns that the Settling Parties colluded to the detriment of the class's interests.").

### C.   The Proposed Settlement Satisfies the *Jiffy Lube* Adequacy Factors

While the fairness prong is "concerned with the procedural propriety of the proposed settlement agreement," the adequacy prong "focuses on the agreement's substantive propriety." *Boyd*, 299 F.R.D. at 460.  As with the fairness inquiry above, review of the adequacy factors confirms the Settlement is sound and thus merits preliminary approval.

### 1.   The Relative Strength of Plaintiffs' Case on the Merits

"The first and second *Jiffy Lube* factors addressing the 'adequacy' of a settlement compel the Court to examine how much the class sacrifices in settling a potentially strong case in light of

how much the class gains in avoiding the uncertainty of a potentially difficult case." *Mills Corp.*, 265 F.R.D. at 256. While Plaintiffs are confident in the strength of their allegations, the *Boyd* court's analysis of this factor in connection with the final approval motion in that analogous action is instructive in its recognition of the inherent uncertainties Plaintiffs face in cases such as this one. In *Boyd*, the court determined that this adequacy factor was met, noting:

> The court partially denied Defendant's motion to dismiss (ECF No. 25), but whether Plaintiffs would prevail on the merits if the case were to proceed is uncertain. Genuine disputes exist regarding whether each Defendant was a fiduciary of the Plan with respect to its investments in Coventry stock; whether each Defendant breached his or her fiduciary duties under ERISA with respect to the Plan's investments in Coventry; and whether that breach caused losses to the Plan, Plaintiffs, and the Settlement Class. Such demonstrations are "fraught with uncertainty," *Langbecker v. Elec. Data Sys. Corp.*, 476 F.3d 299, 308 (5th Cir. 2007), as ERISA claims for breach of fiduciary duty in connection with company stock are complex and quite new, with still evolving contours.

*Boyd*, 299 F.R.D. at 460. Many of the issues identified by the *Boyd* court are applicable to the instant Action; indeed, as discussed below, courts have recognized ERISA actions as uniquely intricate. This adequacy factor is thus satisfied. *See, e.g.*, *Temp. Servs., Inc.*, 2012 WL 4061537, at *12 ("the Plaintiffs, while confident of their claims, face significant risks associated with continued litigation. Thus this consideration supports the adequacy of the settlement amount."); *Groves v. Roy G. Hildreth & Son, Inc.*, No. 08-cv-00820, 2011 WL 4382708, at *5 (S.D.W. Va. Sept. 20, 2011) (finding this adequacy factor met, noting "[a]lthough Plaintiff Class Representatives believe they have strong claims against the defendants, there is obviously no certainty that they will prevail if the settlement is not approved and the litigation continues.").

### 2.    The Existence of Difficulties of Proof or Strong Defenses

As courts within this Circuit have recognized, ERISA litigation is particularly complex, further supporting the adequacy of the proposed Settlement. *See, e.g.*, *In re Wachovia Corp. ERISA Litig.*, No. 09-cv-0262, 2011 WL 7787962, at *4 (W.D.N.C. Oct. 24, 2011) ("ERISA

litigation of the type presented here is a rapidly evolving and demanding area of the law.  New precedents are frequently issued, and the demands on counsel and the Court are complex and require the devotion of significant resources."); *Smith v. Krispy Kreme Doughnut Corp.*, No. 05-cv-00187, 2007 WL 119157, at *2 (M.D.N.C. Jan. 10, 2007) (recognizing the fact that "ERISA is a highly complex and quickly-evolving area of the law" as a factor supporting the proposed settlement).  The  United States Supreme Court's recent decision in *Fifth Third Bancorp, et al. v. Dudenhoeffer, et al.*, 134 S. Ct. 2459 (2014) ("*Fifth Third*")  essentially rewrites the law that had existed for the last twenty years while leaving it to the lower courts to chart new waters in interpreting and applying the decision.[14]  *Id.* at 2473.  Currently,  the Supreme Court is considering another case, *Tibble, et al. v. Edison Int'l., et al.*, No. 13-550 (Oct. 2, 2014), that concerns duties related to the monitoring of investment options in a breach of fiduciary duty claim that could result in more changes to the law.

Moreover, while a trial on the merits always entails considerable risk, in the context of ERISA breach of fiduciary duty class actions, the risk is considerable.  Class Counsel, in negotiating the proposed Settlement, considered the risks and uncertainties of proceeding with the litigation and ultimately prevailing at trial in light of various factors – including the fact that an analogous action tried in this district, *DiFelice v. U.S. Airways, Inc.*, 436 F. Supp. 2d 756 (E.D. Va. 2006), ended in a defense verdict at trial.  There is no doubt that lawsuits of this type brought pursuant to Sections 409 and 502 of ERISA face significant litigation and trial risks.  In fact, KTMC tried an analogous case to verdict, *Brieger v. Tellabs, Inc.*, 659 F. Supp. 2d 967

---

[14]  Specifically, the Supreme Court was called upon to consider whether, when a company retirement plan's fiduciary's decision to buy or hold the employer's stock in the plan is challenged in court, the fiduciary is entitled to a "fiduciary-friendly" pleading standard that the lower courts have called a "presumption of prudence."  Ultimately, the Supreme Court rejected the presumption, thereby creating new significant law in this area of practice.  *Id.* at 2463.

(N.D. Ill. 2009), and is particularly qualified to realistically evaluate the risks of continued litigation.  Indeed, to the best of Class Counsel's knowledge, only four similar "company stock" ERISA class actions, including *DiFelice* and *Tellabs*, have gone to trial, and in each instance, the defendants prevailed.[15]

Further, even if Plaintiffs were to overcome the liability obstacles, as the *Boyd* court recognized, "there are also risks in proving damages at trial" as "the damages issue is uncertain because courts have not had occasion to apply a damages measure in a case like this after a trial." *Boyd*, 299 F.R.D. at 461.  Defendants have and certainly would continue to argue in dispositive motions and/or at trial, among other things, that even if LFG Stock was determined to be an imprudent investment option at some point in time, by the time it would have been deemed imprudent, the price of LFG Stock would have been so low that the amount of damages suffered and/or recoverable by the Plan would be minimal.  To be sure, there is no assurance Plaintiffs would prevail if litigation were to continue – much less, that they would recover more than $5,000,000.00 – or that there would be available insurance coverage to satisfy any award.

In sum, the complex and contested questions of law and fact in ERISA litigation in general and in this Action in particular underscore the appropriateness of the Settlement.

### 3.    The Anticipated Duration and Expense of Additional Litigation

"The third *Jiffy Lube* 'adequacy' factor asks the Court to weigh the settlement in consideration of the substantial time and expense litigation of this sort would entail if a settlement was not reached."  *Mills Corp.*, 265 F.R.D. at 256.  "This factor is based on a sound policy of conserving the resources of the Court and the certainty that unnecessary and unwarranted expenditure of resources and time benefits all parties."  *Id.*

---

[15]  *See also Nelson v. Hodowal (IPALCO)*, 512 F.3d 347 (7th Cir. 2008); *Landgraff v. Columbia HCA Healthcare Corp.*, No. 98-cv-90, 2000 WL 33726564 (M.D. Tenn. May 24, 2000).

Here, the probable costs of continued litigation with respect to both time and money are quite high.  The Settlement in this Action comes at an opportune time given that, if the litigation continues, there would be substantial expense to the Parties associated with necessary factual and expert discovery and assorted motion practice.  While, as discussed *supra*, this Action originally began when the first *Borboa* complaint was filed in June 2011 more than three and a half years ago, and Plaintiffs have expended considerable efforts pursing their allegations in both this Court and the Bankruptcy Court, there is no doubt that the bulk of the litigation lies ahead.  Substantial discovery including numerous depositions of Defendants and third-party witnesses, as well as liability and damages experts would be required before the case would be trial ready, and there would be voluminous briefing ahead, including contested class certification and summary judgment motions, in the absence of the proposed Settlement.  Moreover, a trial in this Action would be complex given the factual and legal issues relevant to Defendants' decision to continue offering Company Stock as a Plan investment option during the Class Period and Plaintiffs' arguments as to why such conduct was imprudent.  Thus, the immediate, guaranteed benefit provided by the Settlement as opposed to the uncertainty of continued, costly, and time-consuming litigation further supports the adequacy of the proposed Settlement.

### 4.    The Solvency of Defendants

The solvency of the defendants was an issue specifically confronted by the Fourth Circuit in *Jiffy Lube*.  Indeed, the Court took special notice of this consideration, stating the "evidence obtained through informal discovery yielded sufficient undisputed facts to support the extent of JLI's insolvency," a fact which helped inform the Fourth Circuit's finding of the adequacy of that settlement.  *Jiffy Lube*, 927 F.2d at 159.  Such a finding would be equally appropriate in this Action, where evidence of LandAmerica's insolvency is found in its bankruptcy petition.  The

Settlement is being funded by insurance proceeds, and the primary insurance policy is a "wasting" policy – the longer the litigation continues, the less money is available from the policy.  These facts certainly call into question whether Defendants could withstand a greater judgment in the absence of the proposed Settlement, underscoring its adequacy.  *See, e.g.*, *Decohen v. Abbasi, LLC*, 299 F.R.D. 469, 480 (D. Md. 2014) ("The defendant's solvency may be relevant in evaluating the settlement's adequacy if the defendant likely could not satisfy a litigated judgment, thus making settlement the only means for claimants to recover at all.").  Even if Plaintiffs were awarded a judgment after trial, they would have had to try to execute the judgment against the individual Defendants, a difficult task given the real possibility that Defendants could themselves file for bankruptcy to avoid payment of a judgment.  Without this Settlement, there is no assurance that Plaintiffs would prevail if litigation were to continue – much less that Settlement Class Members would recover more than the Class Settlement Amount.  This factor thus weighs in favor of granting preliminary approval of the Settlement.

## 5.  The Degree of Opposition to the Settlement

"The final *Jiffy Lube* 'adequacy' factor looks to the reaction of the Class to the proposed settlement and '[t]he attitude of the members of the Class, as expressed directly or by failure to object, after notice to the settlement is a proper consideration for the trial court.'"  *Mills Corp.*, 265 F.R.D. at 257 (quoting *Flinn v. FMC Corp.*, 528 F.2d 1169, 1173 (4th Cir. 1975)).  It is premature to assess this factor at this stage, as notice of the proposed Settlement will only be disseminated to the Settlement Class after this Court grants preliminary approval of the Settlement.  As the *Bicking* court reasoned in its order granting preliminary approval of that proposed settlement, "[i]n this case, class members who would be bound by the settlement have not yet been invited to voice their objections.  Therefore, the Court withholds final approval of

the Settlement Agreement, as it must, until class members have been given proper notice and an opportunity to objection, and until a fairness hearing has been conducted." *Bicking*, 2011 WL 5325674, at *5.  Plaintiffs respectfully submit the same reasoning is warranted here.

## IV.     THE PLAN OF ALLOCATION AND NOTICE PLAN SHOULD BE APPROVED

### A.     The Proposed Plan of Allocation

The proposed Plan of Allocation, attached to the Settlement Agreement as Exhibit 3, is premised on calculating a Plan participant's *pro rata* distribution based upon the individual's balance in the Plan on the first day of the Settlement Class Period plus any acquisitions of LFG Stock during the Settlement Class Period, and then subtracting all dispositions of LFG Stock during the Settlement Class Period and the balance, if any, of LFG Stock remaining on the last day of the Settlement Class Period.  The Net Losses of the Settlement Class Members as calculated pursuant to this formula will then be totaled to yield the loss of the Plan as a whole over the Settlement Class Period.  Accordingly, no Settlement Class Member is singled out for either disproportionately favorable or unfavorable treatment.

In essence, the Plan of Allocation calculates the dollars lost in each individual's account as a result of holding LFG Stock using a formula previously approved in analogous ERISA breach of fiduciary duty class actions within this Circuit and around the country.  *See, e.g.*, *Boyd*, 299 F.R.D. at 461 ("Here, the Plan of Allocation provides a recovery to the Class … on a *pro rata* basis according to each Class Member's recognized claim of damages.  Each Class Member will receive a share of the net proceeds of the Settlement Fund, based approximately on the decline in the value of Coventry stock held in that Class Member's plan during the Class Period in comparison to the decline in value of Coventry Stock held by other Class Members in their Plan accounts….  The Plan of Allocation is similar to those approved by other courts in company

stock fund ERISA cases.  Accordingly, the Plan of Allocation is fair and reasonable and will be approved.") (citations omitted); *In re Wachovia Corp. ERISA Litig.*, No. 09-cv-262 (W.D.N.C. Oct. 24, 2011) (Dkt. No. 175) (Final Order Approving Class Action Settlement approving analogous plan of allocation, finding plan was "fair, reasonable, and adequate"); *Smith, et al. v. Krispy Kreme Doughnut Corp., et al.*, No. 05-cv-187 (M.D.N.C. Jan. 10, 2007) (Dkt. No. 88) (Order Approving Plan of Allocation noting the analogous proposed *pro rata* allocation plan "is a fair and reasonable method of allocating and disbursing the net proceeds of the Settlement among members of the Class").  *See also In re Advanta Corp. ERISA Litig.*, No. 09-cv-4974 (E.D. Pa. Jan. 9, 2014) (Dkt. No. 168) (analogous plan of allocation approved by court); *Shane, et al. v. Edge, et al.*, No. 10-cv-50089 (N.D. Ill. May 17, 2013) (Dkt. No. 114) (Order approving analogous plan of allocation finding plan "fair and reasonable").

Moreover, because the Plan has been terminated, the Settlement Agreement, proposed Preliminary Approval Order, and proposed Final Approval Order and Judgment seek the appointment of Nicholas L. Saakvitne, Esq., principal of Nicholas L. Saakvitne, a Law Corporation,[16] as Plan Administrator to reinstate the Plan for purposes of distributing the Net Settlement Fund.  Class Counsel has worked with Mr. Saakvitne in order to distribute settlement proceeds in two other, analogous actions where the operative plans were terminated prior to settlement, and believes that Mr. Saakvitne's methods are the best practicable and most advantageous for the Settlement Class, as this method preserves all tax benefits provided by the Plan's qualified retirement plan status.[17]  "The proposed allocation need not meet standards of

---

[16]  Mr. Saakvitne's Statement of Credentials is attached hereto as Exhibit C.

[17]  *See In re Advanta Corp. ERISA Litig.*, No. 09-cv-4974 (E.D. Pa. Oct. 9, 2013) (Dkt. No. 161 at ¶ 3) (order granting preliminary approval of settlement, appointing Mr. Saakvitne as "Plan Administrator to (1) reinstate the Plans in order to allow the Net Settlement Fund to be distributed through the Reinstated Plan and (2) serve as Plan Administrator for the Reinstated

scientific precision, and given that qualified counsel endorses the proposed allocation, the allocation need only have a reasonable and rational basis." *Mills Corp.*, 265 F.R.D. at 258. Here, the Plan of Allocation does provide for such reasonable and rational allocation of a recovery that meets the "fair and adequate" standard, and accordingly warrants approval. *MicroStrategy*, 148 F. Supp. 2d at 668.

### B.   The Proposed Notice Plan

#### 1.   Description of the Notice Plan

Rule 23 provides that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the [proposed settlement]." Fed. R. Civ. P. 23(e)(1).   Rule 23(e) does not require that class members be notified by every means possible; rather the Rule simply requires the "best notice practicable under the circumstances." *In re Titanium Dioxide Antitrust Litig.*, No. 10-cv-318, 2013 WL 5182093, at *5 (D. Md. Sept. 12, 2013).   Here, the Notice Plan includes multiple components designed to reach the largest number of Settlement Class Members possible.   First, the Class Notice, attached as Exhibit 1.A to the Settlement Agreement, will be sent by first-class mail to the last known addresses of the Settlement Class Members at least 60 days prior to the Final Approval Hearing.   Additionally, by that same date, the Class Notice, along with other documents related to the litigation such as the Settlement Agreement with all of its exhibits and a list of frequently asked questions, will be posted on a dedicated Settlement website established by Class Counsel.   Further, Class Counsel will cause the Publication Notice, attached as Exhibit 1.B to the Settlement Agreement, to be published in

---

Plan, including for purposes of overseeing the distribution by the Settlement Administrator of the Net Settlement Fund to Settlement Class Members"); *Shane, et al. v. Edge, et al.*, No. 10-cv-50089 (N.D. Ill. Jan. 15, 2013) (Dkt. No. 96 at ¶ 3) (same).

the *Richmond Times-Dispatch*, the largest Richmond-area newspaper.[18]  Class Counsel will also establish and monitor a dedicated, toll-free settlement telephone number with an Interactive Voice Response system which will provide answers to frequently asked questions and also provide contact information for Class Counsel should potential Settlement Class Members have any questions regarding the Settlement.

**2.  The Notice Plan Satisfies Rule 23 and Due Process Requirements**

The proposed Notice Plan agreed to by the Parties satisfies all due process considerations and meets the requirements of FED. R. CIV. P. 23(e).  The proposed notices describe in plain English:  (i) the terms and operations of the Settlement; (ii) the nature and extent of the release of claims; (iii) the maximum attorneys' fees and Plaintiffs' Case Contribution Awards that may be sought; (iv) the procedure and timing for objecting to the Settlement; and (v) the date and place for the Final Approval Hearing.  Courts within this Circuit have approved as fair similar notices and/or notice plans in analogous ERISA company stock cases.  *See, e.g.*, *In re Wachovia Corp. ERISA Litig.*, No. 09-cv-262 (W.D.N.C. Mar. 2, 2011) (Dkt. No. 156) (Order granting preliminary approval of settlement, approving proposed notice plan similar to that proposed here, but lacking publication notice); *In re Coventry Health Care, Inc. ERISA Litig.*, No. 09-cv-2661 (D. Md. Oct. 23, 2013) (Dkt. No. 82) (same); *Smith, et al. v. Krispy Kreme Doughnut Corp., et al.*, No. 05-cv-187 (M.D.N.C. Sept. 27, 2006) (Dkt. No. 71) (same).[19]

---

[18]  The *Richmond Times-Dispatch* has a daily circulation of over 187,000.  *See* http://www.readership.org/readership/papers/richmondtimes.asp.

[19]  Indeed, courts around the country have approved similar notice plans.  *See, e.g.*, *In re Advanta Corp. ERISA Litig.*, No. 09-cv-4974 (E.D. Pa. Jan. 9, 2014) (Dkt. No. 167 at ¶ 4(g)) (Order granting final approval of settlement finding identical notice plan "fully satisfied the requirements of FED. R. CIV. P. 23 and the requirements of due process"); *Dalton, et al. v. Old Second Bancorp, Inc., et al.*, No. 11-cv-1112 (N.D. Ill. Mar. 1, 2013) (Dkt. No. 175 at ¶ 4) (Order preliminarily approving settlement noting identical notice plan was "the best notice practicable under the circumstances"); *In re Calpine Corp. ERISA Litig.*, No. 03-cv-1685 (N.D.

The combination of direct mail, targeted newspaper publishing, and website posting should cause actual notice to reach a very high percentage of affected Plan participants and beneficiaries.  *See* Newberg on Class Actions § 11:53 (4th ed. 2010) ("The notice of the Proposed Settlement, to satisfy both Rule 23(e) requirements and constitutional due process protections, need only be reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the settlement proposed and to afford them an opportunity to present their objections."); 7B Charles Alan Wright, Arthur W. Miller & Mary Kay Kane, FED. PRAC. & PROC. § 1797.6 (3d ed. 2010) (noting courts have approved notices "as long as sufficient contact information is provided to allow the class members to obtain more detailed information about those matters").

## V.   CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE

Within the framework of Rule 23, "[d]istrict courts have wide discretion in deciding whether or not to certify a class." *Bicking*, 2011 WL 5325674, at *2 (citing *Cent. Wesleyan Coll. v. W.R. Grace & Co.*, 6 F.3d 177, 185 (4th Cir. 1992)).  Plaintiffs here request the following proposed Settlement Class be preliminarily certified for settlement purposes:

> All Persons (except Defendants and their Immediate Family Members) who were participants in or beneficiaries of the LandAmerica Financial Group, Inc. Savings and Stock Ownership Plan at any time between February 7, 2008 and July 31, 2009, and whose individual Plan accounts included investment in LandAmerica Stock at any point during the Settlement Class Period.

---

Cal. Oct. 23, 2008) (Dkt. No. 164 at ¶ 3(h)) (Order and Final Judgment finding identical notice plan provided settlement class "proper and adequate notice" and that "such notice fully satisfies the requirements of FED. R. CIV. P. 23 and the requirements of due process").

### A.     The Proposed Class Satisfies the Requirements of Rule 23(a)

#### 1.     Numerosity

"No specified number is needed to maintain a class action."  *Bicking*, 2011 WL 5325674, at *2 (citing *Brady v. Thurston Motor Lines*, 726 F.2d 136, 145 (4th Cir. 1984)).  Rather "an application of the rule is to be considered in light of the particular circumstances of the case." *Id.* In this case, the proposed Settlement Class consists of thousands of former Plan participants. Specifically, according to the 2008 Form 5500 filed on behalf of the Plan, there were approximately 10,000 Plan participants as of December 31, 2008.  *See* Complaint ¶ 80, n.6. Numerosity is thus plainly satisfied, as courts in analogous ERISA breach of fiduciary actions have similarly found.  *See, e.g.*, *In re Coventry Health Care, Inc. ERISA Litig.* No. 09-cv-2661, (D. Md. Oct. 23, 2013) (Dkt. No. 82) (Order Preliminarily Approving Settlement, finding approximately 18,000 settlement class members satisfied numerosity requirement).

#### 2.     Commonality

"A common question is one that can be resolved for each class member in a single hearing…. A question is not common, by contrast, if its resolution turns on a consideration of the individual circumstances of each class member."  *Bicking*, 2011 WL 5325674, at *2.  The Supreme Court clarified the commonality standard in its *Wal-Mart* case, noting "to establish commonality, the party seeking certification must 'demonstrate that the class members have suffered the same injury' and that their claims 'depend upon a common contention.'"  *Boyd*, 299 F.R.D. at 458 (citing *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011)).

"Commonality is satisfied if only one legal or factual issue is shared by all class members." *Temp. Servs., Inc.*, 2012 WL 4061537, at *1.  In this action there are a number of questions of law and fact common to the Settlement Class.  *See, e.g.*, Complaint ¶ 81;

Preliminary Approval Order at ¶ 1(b)(i).  The overarching question of law and fact applicable to all Settlement Class Members is whether the Defendants breached fiduciary duties owed to the Plan and its participants by causing the Plan to offer LandAmerica Stock as an investment option for the Plan, or by maintaining a preexisting investment in LandAmerica Stock during the Settlement Class Period.  This query is vital to each and every potential Settlement Class Member during the Settlement Class Period and, in and of itself, is sufficient to meet the commonality requirement of Rule 23(a)(2).  Accordingly, just as in the analogous *Boyd* action, commonality is satisfied here.  *See Boyd*, 299 F.R.D. at 458 ("Here, there are numerous questions of law and fact common to the Settlement Class, principally whether Defendants violated their fiduciary duties under ERISA by continuing to have the Plan invest in Coventry stock when they knew it was not a prudent investment.").

### 3.     Typicality

The Supreme Court has noted that "[t]he commonality and typicality requirements of Rule 23(a) tend to merge."  *Boyd*, 299 F.R.D. at 458 (citing *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 158 n.13 (1982)).  To show typicality between a plaintiff and the class, the plaintiff "must be part of the class and possess the same interest and suffer the same injury as the class members."  *Id.* at 156.  Thus, the typicality requirement "focuses on whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct."  *Boyd*, 299 F.R.D. at 458.  A plaintiff's claim may factually differ and still be "typical" of class member claims, if "it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory."  *Id.*

26

The typicality requirement of Rule 23(a)(3) is satisfied here because the Named Plaintiffs' claims arise from and challenge the same event or course of conduct that gave rise to the claims of other Settlement Class Members and are based on the same legal theory (*i.e.*, breaches of fiduciary duty as it relates to LandAmerica Stock in the Plan). Because the interests of the Named Plaintiffs are aligned with the Settlement Class Members, typicality is satisfied. *See, e.g.*, *Boyd*, 299 F.R.D. at 459 ("Ultimately, 'as goes the claim[s] of the [Named Plaintiffs,] so go the claims of the Rule 23 Settlement Classes.'")

### 4. Adequacy

Finally, Rule 23(a)(4) requires "representative parties [who] will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). "Representation is adequate if: (1) the named plaintiff's interests are not opposed to those of other class members, and (2) the plaintiff's attorneys are qualified, experienced, and capable." *Boyd*, 299 F.R.D. at 459. In 2003, Congress added Rule 23(g) to define the court's inquiry into the adequacy of class counsel, thereby decoupling this inquiry from Rule 23(a)(4). *See, e.g.*, *In re Titanium Dioxide Antitrust Litig.*, 284 F.R.D. 328, 350 (D. Md. 2012) *amended*, 962 F. Supp. 2d 840 (D. Md. 2013) ("Pursuant to the 2003 amendments to Rule 23, the qualifications and experience of Plaintiffs' counsel are now considered under Rule 23(g).") The standard for meeting the adequacy requirement of Rule 23(a)(4) are quite easily satisfied in this Action.[20]

Plaintiffs have no interests antagonistic to those of the absent Settlement Class Members. Rather, Plaintiffs' interests in the relief sought totally overlap with those of all class members as demonstrated by the fact that, ultimately, Named Plaintiffs seek to establish that Defendants breached their fiduciary duties by continuing to offer LandAmerica Stock as an investment

---

[20] Plaintiff addresses the adequacy of counsel below in Section V.C.

alternative which caused the Plan and Settlement Class Members an economic loss.  *See, e.g.*, *Harris v. Rainey*, 299 F.R.D. 486, 491 (W.D. Va. 2014) ("the total overlap of the relief sought by all plaintiffs demonstrates that the adequacy of representation requirement is met.").

### B.    The Proposed Class Meets the Requirements of Rule 23(b)(1)

In addition to demonstrating the requirements of Rule 23(a) are met, Plaintiffs must also establish that at least one subsection of Rule 23(b) is satisfied.  Here, certification is proper under Rule 23(b)(1).  "[S]ubsection A [of Rule 23(b)(1)] attempts to avoid possible prejudice to the defendants, while subsection B [of Rule 23(b)(1)] is concerned with prejudice to the class members." *DiFelice v. U.S. Airways, Inc*, 235 F.R.D. 70, 80 (E.D. Va. 2006).  As the *DiFelice* court noted, "[a]lleged breaches by a fiduciary to a large class of beneficiaries present an especially appropriate instance for treatment under Rule 23(b)(1)." *Id.*  "Indeed," the *DiFelice* court continued, "given the derivative nature of suits brought pursuant to § 502(a)(2) on behalf of the Plan, ERISA litigation of this nature presents a paradigmatic example of a (b)(1) class." *Id.* (citations, quotations omitted).  *See also In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 604 (3d Cir. 2009) (same); *Knight v. Lavine*, No. 12-cv-611, 2013 WL 427880, at *4 (E.D. Va. Feb. 4, 2013) (same).  Here, the Complaint alleges breaches of fiduciary duties under ERISA.  Given the unique "group-based" relief offered under ERISA for violations of fiduciary duties owed to participants in covered benefit plans, an action such as this is a textbook case for class treatment under Rule 23(b)(1)(B).[21]

---

[21]  In the alternative, certification under subsection (b)(1)(A) is also appropriate.  In fact, it is not uncommon for courts to certify ERISA class actions under both subsections of Rule 23(b)(1). *See, e.g.*, *Harris v. Koenig*, 271 F.R.D. 383, 396 (D.D.C. 2010) (finding certification appropriate under Rule 23(b)(1)(A) or 23(b)(1)(B)).  Accordingly, the Court may also certify the Settlement Class under Rule 23(b)(1)(A).

### C.      KTMC Should be Appointed Counsel for the Class

Unless a statute provides otherwise, a court that certifies a class must appoint class counsel.  *See, e.g.*, *Temp. Servs., Inc. v. Am. Int'l Grp., Inc.*, No. 08-cv-00271, 2012 WL 2370523, at *5 (D.S.C. June 22, 2012).  In appointing class counsel, the court must consider:  (i) the work counsel has done in identifying or investigating potential claims in the action;[22] (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class.  *Id.* (citing FED. R. CIV. P. 23(g)(1)).

As demonstrated by the Court's appointment of Class Counsel as interim class counsel (Dkt. No. 34), KTMC is among the most experienced ERISA class action firms in the nation, and is highly qualified to prosecute this litigation.  KTMC has substantial experience litigating similar ERISA class action cases, along with other complex litigation, and is well-qualified to weigh the risks and benefits of continued litigation as compared to the relief provided by the Settlement.  *See also* discussion of KTMC's extensive ERISA experience, Dkt. No. 31 at 15 to 22.  KTMC, headed by Joseph H. Meltzer, Chair of the ERISA Litigation Department, and his partners Edward W. Ciolko and Peter A. Muhic, is comprised of highly qualified ERISA class action attorneys and unequivocally recommends this Settlement.[23]

In appointing KTMC interim lead class counsel in another ERISA breach of fiduciary duty class action, a fellow district court stated "KTMC is one of the most experienced ERISA litigation firms in the country, with particular expertise in the area of ERISA breach of fiduciary class actions" and noted that "KTMC has also prevailed in appeals before the First, Third, Sixth, and Ninth Circuits resulting in seminal decisions that have helped shape this relatively new area

---

[22]  *See* discussion *supra* in Sections II.C and III.B.II.
[23]  *See* firm résumé of KTMC attached as Exhibit D.

of ERISA jurisprudence." *In re Chesapeake Energy Corp. 2012 ERISA Litig.*, 286 F.R.D. 621, 624 (W.D. Okla. 2012).  Most recently, KTMC, along with co-counsel in that case, and one of Plaintiffs' Counsel here, GM&E, were successful in convincing the Supreme Court in the *Fifth Third* case discussed *supra*, to reject the fiduciary-friendly presumption of prudence.  *Fifth Third*, 134 S. Ct. at 2463.[24]  Additionally, during its successful history, KTMC has recovered billions of dollars for class members in cases where the firm served as lead or co-lead counsel. *See* Dkt. No. 31 at 20-21.  For all these reasons, Plaintiffs respectfully request that the Court designate KTMC as Class Counsel.

Throughout the litigation, Class Counsel was assisted ably by Plaintiffs' Counsel firms GM&E and Izard Nobel and by Liaison Counsel Williams & Skilling, P.C.,[25] who used their experience and access to resources to investigate and litigate Plaintiffs' underlying allegations which ultimately led to the Settlement in this Action.  Each of the firms that comprise Plaintiffs' Counsel has decades of experience in complex class actions, and recommend this Settlement as the best solution for the Settlement Class Members.

## VI.  CONCLUSION

Based on the foregoing, Plaintiffs respectfully move this Court to grant their Unopposed Motion for Preliminary Approval of Class Action Settlement, Preliminary Certification of Settlement Class, Approval of Class Notice, Approval of Plan of Allocation, and Scheduling of Final Approval Hearing.

---

[24] KTMC and GM&E were also successful in the appeal before the Sixth Circuit that resulted in the petition for *certiorari* that was granted by the Supreme Court.  In *Dudenhoefer v. Fifth Third Bancorp*, 692 F.3d 410 (6th Cir. 2012), KTMC and GM&E also successfully argued that defendants' express incorporation of SEC filings into a retirement plan's summary plan description was sufficient to support an allegation that defendants conveyed misleading information to plan participants (the Supreme Court decision did not address this ruling by the Sixth Circuit).

[25] The firm résumés of these firms are attached hereto as Exhibits E through G, respectively.

Dated:  March 12, 2015                         Respectfully submitted,

                                               */s/ Charles L. Williams*
                                               Charles L. Williams (VSB No. 23587)
                                               James C. Skilling (VSB No. 27998)
                                               WILLIAMS & SKILLING, P.C.
                                               4801 Radford Avenue, Suite A
                                               Richmond, VA  23230
                                               Telephone: (804) 447-0307
                                               Facsimile:  (804) 447-0367
                                               Email: cwilliams@williamsandskilling.com
                                               Email: jskilling@williamsandskilling.com

                                               *Interim Liaison Counsel*

                                               Edward W. Ciolko (admitted *pro hac vice*)
                                               Peter A. Muhic (admitted *pro hac vice*)
                                               Donna Siegel Moffa (admitted *pro hac vice*)
                                               Mark K. Gyandoh (admitted *pro hac vice*)
                                               Julie Siebert-Johnson (admitted *pro hac vice*)
                                               KESSLER TOPAZ MELTZER & CHECK LLP
                                               280 King Of Prussia Rd
                                               Radnor, PA 19087
                                               Telephone:  (610) 667-7706
                                               Facsimile:  (610) 667-7056
                                               Email:  eciolko@ktmc.com
                                               Email:  pmuhic@ktmc.com
                                               Email:  dmoffa@ktmc.com
                                               Email:  mgyandoh@ktmc.com
                                               Email:  jsjohnson@ktmc.com

                                                *Interim Class Counsel*

                                               Thomas J. McKenna (admitted *pro hac vice*)
                                               Gregory M. Egleston (admitted *pro hac vice*)
                                               GAINEY McKENNA & EGLESTON
                                               440 Park Avenue South, 5th Floor
                                               New York, NY 10016
                                               Telephone:  (212) 983-1300
                                               Facsimile:  (212) 983-0380
                                               Email:  tjmckenna@gme-law.com
                                               Email:  gegleston@gme-law.com

                                               *Attorneys for Plaintiff Timothy O'Grady*

31

Robert A. Izard
Mark P. Kindall
IZARD NOBEL LLP
29 South Main Street, Suite 305
West Hartford, CT 06107
Telephone: (860) 493-6292
Facsimile:  (860) 493-6290

Email:  rizard@izardnobel.com
Email:  mkindall@izardnobel.com

*Attorneys for Plaintiff Bertrand Francis*

## CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of March, 2015, I electronically filed a copy of the foregoing with the Clerk of Court using the CM/ECF system which will send a notification to all counsel of record.

_/s/ Charles L. Williams_____
Charles L. Williams (VSB No. 23587)
WILLIAMS & SKILLING, P.C.
4801 Radford Avenue, Suite A
Richmond, VA  23230
Telephone: (804) 447-0307
Facsimile:  (804) 447-0367
Email: cwilliams@williamsandskilling.com

_Interim Liaison Counsel_