```
                IN THE UNITED STATES DISTRICT COURT
              FOR THE EASTERN DISTRICT OF VIRGINIA
                        Richmond Division




           Kerrie Borboa, et al,

                                         Plaintiffs,

                           versus          3:13CV844

           Theodore L. Chandler, et al,

                                         Defendants




         before:  HONORABLE JOHN A. GIBNEY, JR.
               United States District Judge


                        Settlement

                      April 13, 2015
                    Richmond, Virginia



                  Gilbert F. Halasz, RMR
                  Official Court Reporter
                     U. S. Courthouse
                   701 East Broad Street
                 Richmond, Virginia 23219

                      (804) 916-2248


                        APPEARANCES
```

Mark K. Gyandoh, Esq.

Charles L. Williams, Esq.

for the plaintiffs


Olivia S. Singelmann, Esq.

David Leland, Esq.

Scott Fredericksen, Esq.

David Hickerson, Esq.

for the defendants

```
1          THE CLERK:  Case number 13 CV 844.

2          Kerrie Borboa, et al. versus Theodore L.

3     Chandler, et al.

4          Plaintiffs are represented by Mr. Mark Gyandoh

5     and Mr. Charles Williams.

6          Defendants are represented by Mr. Scott

7     Fredericksen, Olivia Singelmann, David Hickerson, and

8     David Leland.

9          Are counsel ready to proceed?

10         MR. GYANDOH:  We are.

11         MR. FREDERICKSEN:  Good afternoon, Your Honor.

12    Yes.

13         THE COURT:  Good afternoon.

14         We are here today for the preliminary approval

15    of a settlement agreement in this case.

16         And let me just ask Mr. Gyandoh --

17         MR. GYANDOH:  Gyandoh.

18         THE COURT:  -- some questions here.

19         MR. GYANDOH:  Sure.

20         THE COURT:  I had an interesting time struggling

21    through these documents this weekend.  Can you tell

22    me where in the settlement agreement it says the

23    amount?

24         MR. GYANDOH:  Of course, Your Honor.

25         THE COURT:  I can't hear you.
```

1          MR. GYANDOH:  Sure.

2          THE COURT:  I can't hear you.

3          MR. GYANDOH:  Oh.

4          THE COURT:  Now I hear you.

5          I am looking at the settlement agreement.

6          MR. GYANDOH:  On page two of the settlement

7     agreement, definition 1.13.

8          THE COURT:  Oh, there it is.  The amount.

9          Good.  Let me see if I understand exactly, or

10    maybe inexactly, how this money gets distributed.

11         Essentially you take all the members of the

12    class and you determine what their net losses are,

13    and then you give them their proportional share of

14    the five million dollars.  Is that fair?

15         MR. GYANDOH:  That's correct, Your Honor.  It

16    will actually be the net settlement amount.  So if is

17    five subtracted --

18         THE COURT:  Minus the costs and fees and so

19    forth.

20         MR. GYANDOH:  Exactly.

21         THE COURT:  Okay.

22         How many people are in the class?

23         MR. GYANDOH:  There are slightly under 5,000.

24    We received the records from the records keeper.  It

25    is about 4,991, folks.

1          THE COURT:  All right.

2          Do you have anything else to add?  I read your

3     submission.

4          MR. GYANDOH:  No, Your Honor.

5          THE COURT:  Anything else to say?

6          MR. GYANDOH:  Just that I think we are extremely

7     proud of the settlement.  We congratulate opposing

8     counsel.  It is hard-fought, and I think it's good

9     for the class.

10         THE COURT:  Right.  Thank you.  Do you have

11    anything to add, Mr. Williams?

12         MR. WILLIAMS:  No, sir.

13         THE COURT:  Oh, come on.  All right.

14         How about our friends from the defense side?  Do

15    you have anything to add?

16         MR. FREDERICKSEN:  No, Your Honor.

17         THE COURT:  All right.

18         Let me make some preliminary findings for the

19    class settlement.

20         I find that the parties, the members of the

21    class are so numerous that joinder of all of them is

22    impractical, and that they all share common questions

23    of law and fact, namely how the money was invested

24    and whether the people doing the investing or

25    advising them, whether they knew that the company was

1    doing poorly.

2         The claims of the representative parties, they

3    are all employees or former employees of Land

4    America, who were members of the retirement plan who

5    fell into the same unfortunate boat as the rest of

6    the people.  They not only wound up not having a job,

7    but they wound up losing a fair amount of their

8    retirement.

9         I find that the class representatives were

10   fairly and adequately protecting the interests of the

11   class.  And I find that class counsel is more than

12   capable of handling this case, this kind of case, and

13   has a good track record all over the country of doing

14   these kinds of things.

15        So that satisfies .3A.  As to 23B3, I find

16   that -- what -- hold on one second.

17        Isn't there a 23B class?

18        MR. GYANDOH:  Yes, Your Honor, 23B1.

19        THE COURT:  OKAY.

20        All right.  Okay.  Let me look at -- I thought

21   this was a 23B3 class.  Why did I look at 23B1?  All

22   right.  I find that if all the class members, or a

23   number of the class members prosecuted separate

24   actions there would be a possibility or strong risk

25   of inconsistent or varying adjudications, and that as

1  a practical matter although it wouldn't be res

2  judicata, resolution of the case with respect to some

3  of them would pretty much take care of the case for

4  all of them.  So I find that 23B1 is satisfied.

5      So tell me a little bit about how far you all

6  went in discovery in this case, and what informal

7  discovery you did in this case.

8      MR. GYANDOH:  Of course, Your Honor.

9      Initially the case was filed in 2011, but we had

10 to -- we withdrew the case without prejudice to

11 re-file again in 2013.

12     As far as discovery is concerned, we did engage

13 in informal discovery at first asking for

14 plan-related documents from the defendants, and as we

15 got into the case we asked for -- we asked for

16 documents from the trustee, the bank trustee, which

17 is involved in the bankruptcy case.  This is

18 information we used for the settlement negotiations

19 in this case, and consisted of the plan committee

20 meeting minutes, board of directors meeting minutes,

21 and other documents related to the Bank America

22 stock.  But there are still additional, many

23 terabytes of information that the plaintiff's trustee

24 had held, which was willing to be produced, but in

25 all we reviewed probably in addition to the excellent

1    discovery produced a lot of publicly available

2    information, because this case was based on, from our

3    point of view, they were publicly available.  So we

4    reviewed several thousand documents and pages of SEC

5    filings, and related filings to the Land America

6    business.

7         THE COURT:  Okay.  What was the amount of stock

8    that was put into the plan that essentially turned

9    out to be worthless, or close to worthless?

10        MR. GYANDOH:  You know, the class period starts

11   in November -- sorry -- in June 30th of 2008.  And

12   the way we figured out how much was in there is that

13   at the beginning of the class period there was

14   approximately eight -- well, about 850,000 shares of

15   Land America stock for the 2008 period.  So the price

16   of the company stock was $22 at the start of the

17   class period.  That comes out to about $18 million

18   worth of stock in the plan when the class period

19   started.  That settlement class period started as

20   early as February.  So the stock price was a little

21   higher.  So still about around $20 million.  By the

22   end of the class period, which was July of 2009, the

23   stock was virtually worthless.  About $76,000 left in

24   the plan.  The company actually went bankrupt in

25   November of 2008.

1          THE COURT:  Okay.

2          Tell me, have you taken any depositions in the

3    case?

4          MR. GYANDOH:  We did not get depositions in this

5    case, Your Honor.

6          You know we filed -- we had, you know, we

7    started informal settlement discussions and

8    eventually we made the motion to dismiss, filed an

9    amended complaint and motion to dismiss, and

10   afterwards the parties made an attempt to settle.

11   But we had no depositions, I mean discovery

12   production.

13         THE COURT:  Tell me the risk the plaintiffs

14   faced going forward with the case.

15         MR. GYANDOH:  Of course, Your Honor.

16         THE COURT:  I know there is a risk you might

17   lose.

18         MR. GYANDOH:  Yes.  I think particularly in

19   these ERISA cases, stock cases, I think I will give

20   you an example.  Just overall, only a few of these

21   cases have come to trial.  In our brief we mentioned

22   actually a case in this district, U.S. versus

23   Airways.  And that ended in a defense verdict.  My

24   firm, and I was counsel in that firm, we tried a case

25   to verdict and we lost in the Northern District of

 1    Illinois.

 2         The problem that plaintiffs face, and faced in

 3    this case in particular, is that -- is one of

 4    liability.  One of the issues is exactly when was it

 5    prudent, when did the stock become imprudent?  You

 6    are going to have different opinions on that.

 7    Because if there is -- no court has decided what the

 8    exact client did.  One of the problems we faced here

 9    was the short class period.  It started in June of

10    2008, and the company went bankrupt in November of

11    2008.  So obviously the defendants did make this

12    argument, when was the fiduciary supposed to know

13    when, what -- when to cut lose?  Defendants made the

14    argument it wasn't until November 21st when

15    Fidelity backed out of the agreement to buy Land

16    America that they knew it was imprudent.

17         Well, the very next day, next trading day, the

18    stock was at 51 cents.  If we went to trial and The

19    Court found liability on that date, we are talking

20    about damages of $432,000.  And the fact The Court

21    could also find that there is no practical way a

22    fiduciary would have known that, including that date,

23    and not even final liability, that has been the case

24    in the four cases that have gone to trial.

25         Additionally, you know, even though we won the

1    motion to dismiss, but I acknowledge in the

2    plaintiff's cases where even The Court granted or

3    denied a motion to dismiss they do acknowledge these

4    cases are inherently difficult to prove.

5         So we are faced with a situation where we knew,

6    best case scenario, if we went to trial maybe we

7    would get $18 million.  Because the way you measure

8    damages here is you take the opportunity cost, what

9    the amount of money that the plan lost, and what

10   would have been gained if you put it in another

11   investment.  In that period of time, in 2008, most

12   of -- the stock market was down for almost, for most

13   investments.  I take note there were about 14 other,

14   13 other investments in the Land America plan.  I

15   think each of them went down during that time period.

16   So probably the most prudent investment would have

17   been money market fund.  Best case, 18 million or so.

18   Worst, around $2,000, or nothing at all if The Court

19   found that percentage.  So we are balancing these,

20   this reality.  But we decided we should settle for

21   the amount we settled for.

22        THE COURT:  All right.  Thank you.

23        MR. GYANDOH:  Sure.

24        THE COURT:  You know, the value of the assets in

25   the Gibney Retirement Fund went down pretty

1    remarkably during that period of time, too, but now I

2    have a better retirement plan by far.

3         Okay.

4         I find that the settlement is reasonable given

5    the reasonable balance of the risks of litigation

6    versus the possible award of going forward with the

7    case.  I find that the case has moved forward from

8    its inception, and the plaintiffs have compiled an

9    adequate amount of information to make an informed

10   judgment about the case.

11        And did you have a mediator in this?

12        MR. GYANDOH:  We did, Your Honor.  We actually

13   started out with a private mediator, but the

14   settlement we are presenting today was through Judge

15   Novak.

16        THE COURT:  If he settled it, your arms are

17   probably out of their joints.

18        So I find that the negotiations were done at

19   arm's length.  And obviously counsel are experienced

20   in this whole thing.  I will preliminarily approve

21   the settlement.

22        I will -- I have your draft order.  I will go

23   back and re-read it to make sure that it says what I

24   thought it said and enter it later today or tomorrow

25   morning.

```
 1        And we have a date set for the final approval;
 2   is that correct?
 3        MR. GYANDOH:  That's correct, Your Honor, July
 4   20th.
 5        THE COURT:  Okay.  So we have got some moving to
 6   do between now and then, but I think that should be
 7   taken care of.
 8        Do the defendants have anything you want to add?
 9        MR. FREDERICKSEN:  Nothing additional, Your
10   Honor.
11        THE COURT:  All right.
12        Well, thank you all very, very much for a good
13   job on this case.
14        The last time you were here I was a little hard
15   on you all on the amount of legalese in the documents
16   in this case.  You know, I had just finished reading
17   the rules and they stated they are supposed to be
18   comprehensible to people who are in the class.  I
19   apologize for being harsh on you.  All right.
20   Anything else?
21        MR. FREDERICKSEN:  Thank you, Your Honor.
22        THE COURT:  Thank you very much.
23                    HEARING ADJOURNED.
24       THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT.
25                 GILBERT FRANK HALASZ, RMR
                   OFFICIAL COURT REPORTER
```